UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ROGER PRICE | CIVIL ACTION NO. 11-cv-0386 |
| VERSUS | JUDGE STAGG |
| WARDEN, FORCHT WADE CORRECTIONAL CENTER | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Roger Clayton Price ("Petitioner") was sentenced to prison at a time when a Louisiana statute provided that parole revocation would result in the forfeiture of a maximum 180 days of good time. The legislature later amended the statute to provided that a prisoner whose parole was revoked forfeited all of his good time. Petitioner was released on parole after that change in the law. His parole was revoked. The State takes the position that law in effect at the time of revocation applies so that Petitioner forfeited all of his good time. Petitioner argues that the 180-day limit in effect at time he was sentenced should apply because application of the post-conviction amendment would violate the Ex Post Facto Clause. For the reasons that follow, it is recommended that the petition be denied and a certificate of appealability granted.

### Relevant Facts

Petitioner was convicted of armed robbery in Sabine Parish and, in 1984, was sentenced to 40 years at hard labor. Under the law then in effect, Petitioner was eligible to

receive a diminution of sentence or "good time" for good behavior. The good time accrued at a rate of 15 days for every 30 days served. Petitioner rejected an offer in 1984 to earn double good time, or 30 days of good time for every 30 days served, that would have required him to forfeit his incentive wages. He nonetheless accumulated several years of good time credits before he was released on parole supervision in December 20, 2003.

While on parole in November 2004, Petitioner was arrested for simple battery in Vernon Parish. He received a six-month suspended sentence. Petitioner pleaded guilty in 2005 to DWI 1st offense in Vernon Parish and received a sentence of 120 days in the parish jail. Based on Petitioner's commission of these crimes, the State successfully revoked Petitioner's parole on the armed robbery sentence in May 2006. Petitioner was returned to prison.

Louisiana provides in La. R.S. 15:571.4 for forfeiture of good time for matters such as escape, disciplinary violations, or parole revocation. At the time Petitioner committed the armed robbery, was convicted, and sentenced, the statute provided for the forfeiture of a maximum 180 days good time by inmates returned to prison for parole violation. Act 820 of 1997 amended the statute so that La. R.S. 15:571.4(b)(2) provided at the time Petitioner was paroled that an inmate who is returned to custody because of a violation of the terms of parole "shall forfeit all good time earned or credits toward the reduction of the projected good time parole supervision date on that portion of the sentence served prior to the granting of parole.

Petitioner's Certificate of Parole is included in the record, but the copy is of poor quality. Tr. 49-50. It states that parole is granted upon the condition that the inmate has agreed to observe and perform several conditions and directives listed on the certificate, all of which are agreed to be conditions precedent to his release. The list includes several general and special conditions. The final general condition, number 18, is almost impossible to read on the actual certificate. A witness read the provision at a hearing as follows: "I understand that should my parole be revoked for any reason, I will forfeit all good time earned on that portion of my sentence prior to parole as required by Act 820 of 1997, Regular Session." Tr. 127. Petitioner signed the certificate that included the provision.

After Petitioner was returned to prison, he filed an administrative proceeding to seek restoration of the good time credits he earned before he was released on parole. The request was denied. Petitioner next filed a petition for judicial review in the 19th Judicial District Court. A commissioner held a hearing and heard from Petitioner and a Department of Corrections time computation analyst.

The commissioner issued a recommendation that the ex post facto challenge be denied because Petitioner had been put on notice of the new statutory provision at the time he was released on parole, "and it is the date of the petitioner's release on parole that governs what forfeiture provisions apply, rather than the date of the commission of the petitioner's offense." Tr. 80. The district judge adopted the recommendation without additional comment. Petitioner appealed to the First Circuit Court of Appeal. The appellate court issued a four-page opinion in which it reviewed the earlier proceedings and, without any

legal analysis or specific discussion of the ex post facto argument, summarily affirmed the judgment of the district court. Tr. 188-91. The Supreme Court of Louisiana denied writs without comment. Tr. 185.

**Standard of Review**

Federal habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts. Pape v. Thaler, 645 F.3rd 281, 287 (5th Cir. 2011). A state court makes an unreasonable application of clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855, 1862 (2010).

**Relevant Judicial Decisions**

Article 1, § 10 of the United States Constitution provides: "No State shall ... pass any ... ex post facto Law ...." Among the laws that are considered to violate the prohibition are

those that change the punishment, and inflict a greater punishment, than the law annexed to the crime when it was committed. Calder v. Bull, 3 U.S. 386, 3 Dall. 386 (1798). "To prevail on this sort of *ex post facto* claim, [a petitioner] must show both that the law he challenges operates retroactively (that it applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted." Johnson v. U.S., 120 S.Ct. 1795, 1800 (2000).

The Supreme Court has decided a number of cases that applied ex post facto principles in similar settings. In Lindsey v. Washington, 57 S.Ct. 797 (1937) a state statute was enacted after petitioner committed a crime but before he was sentenced. The new law modified the law regarding sentencing so that what had been the maximum sentence was now mandatory. The Court held that the application of the new sentencing structure violated the ex post facto clause. "The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer." Lindsey, 57 S.Ct. at 799.

The Supreme Court summarily affirmed a District of Massachusetts three-judge panel decision in Greenfield v. Scafati, 277 F.Supp. 644 (D. Mass. 1967), summarily aff'd, Scafati v. Greenfield, 88 S.Ct. 1409 (1968). The prisoner in that case was sentenced in 1962 to a term of five to seven years. State law at the time entitled him to earn good conduct deductions from his sentence throughout the period of his incarceration. State law had several provisions for forfeiture for misconduct while in prison, but it did not provide for forfeiture for violation of parole. The state statutes were amended in 1965 to add a provision

that a prisoner released on parole who fails to observe the rules of parole and is returned to prison for the violation shall not receive good conduct deductions for any of the first six months after he is returned. Mr. Greenfield was paroled after the amendment took effect. He violated his parole and, on return to prison, the State invoked the new statute to deny him good conduct credit during his first six months of return.

A three-judge panel reviewed the Supreme Court's ex post facto decisions and determined that "statutory reduction, after incarceration, of the amount of good conduct allowance which can be earned has been invalidated." Greenfield, 277 F.Supp. at 645. The panel also held that the increase in sentence was not made constitutional by attaching it to parole, which is voluntary by the prisoner. The Supreme Court affirmed in a two-sentence per curiam opinion. The first sentence granted the appellee leave to proceed as a pauper. The second stated: "The motion to affirm is granted and the judgment is affirmed."

The Court faced a similar claim in Weaver v. Graham, 101 S.Ct. 960 (1981). It held that Florida violated the Ex Post Facto Clause when it applied to a prisoner new laws that reduced the amount of good time he could earn. The law in place at the date of the offense and sentencing provided a formula for a prisoner to obtain gain-time credits at various rates during his incarceration. After the prisoner was sentenced, the legislature repealed the statute on the subject and enacted a new formula that significantly reduced the number of days of gain-time credit that could be earned. The State applied the new law to all prisoners, even those whose offenses took place before its effective date.

The Supreme Court rejected an argument that a law must impair a "vested right" to violate the ex post facto prohibition. It explained that what was important was "not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Weaver, 101 S.Ct. at 965. "Thus, even if the statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." Id. The Court, citing Lindsey and the three-judge decision in Greenfield, held that the application of the amended statute violated the Constitution. The Court reasoned that the new provision restricted an inmate's "opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment," which ran afoul of the prohibition against ex post facto laws. Weaver, 101 S.Ct. at 968.

The Supreme Court found another ex post facto violation in Lynce v. Mathis, 117 S.Ct. 891 (1997) when Florida changed its law concerning earning early release time credits awarded to inmates to reduce prison overcrowding. Lynce was sentenced at a time when Florida law provided for early release credits if prison populations exceeded certain levels. Lynce was released based on his accumulated days of overcrowding credits. The Florida legislature later passed a statute that canceled the overcrowding credits for certain classes of inmates, including those like Lynce who had been convicted of attempted murder. The State applied the statute retroactively, and Lynce was sent back to prison to serve his sentence without counting the overcrowding credits. The Court held that the retroactive application

of the statute was unconstitutional. An objective appraisal of the impact of the change in law was that it disadvantaged the prisoner by prolonging his imprisonment when it made ineligible for early release a class of prisoners who were previously eligible.

The Fifth Circuit in Beebe v. Phelps, 650 F.2d 774 (5th Cir. 1981) reviewed a claim very similar to the one presented in this case. In 1966, when Travis Beebe pleaded guilty to armed robbery, La. R.S. 15:571.4 (the same statute at issue in this case) was silent on the effect of parole revocation on previously earned good time. After Beebe was sentenced, the legislature amended the statute to provide for the forfeiture of a maximum 180 days good time by inmates returned to an institution for parole violation on or after July 26, 1972. Mr. Beebe was paroled in November 1972, and his parole was revoked in 1978 because of a conviction for possession of a firearm by a felon.

Louisiana applied the new law and found that Mr. Beebe forfeited 180 days of his previously earned good time when his parole was revoked. His ex post facto challenge was rejected by the Louisiana courts, and he sought federal habeas relief. Judge Sear, writing for the district court, found a violation and ordered the State to restore the 180 days good time. He cited in support Greenfield v. Scafati and observed that the crucial issue "is not that petitioner had notice that he would forfeit his accrued good time if he violated parole, but that the forfeiture provision, which was passed after the commission of the armed robbery, alters his punishment for that offense to his disadvantage." He added that the forfeiture of the good time was not a punishment for the firearms conviction, for which a separate three- year prison term had been imposed. Rather, the forfeiture of good time was a sanction that

extended the time remaining on the original armed robbery sentence. The practical effect was a statutory increase in punishment for the first offense, enacted after the commission of that offense. The State appealed to the Fifth Circuit, which issued a one-paragraph per curiam opinion that affirmed the decision. The Fifth Circuit cited the then-new decision in Weaver v. Graham and agreed with the opinion of Judge Sear, which it attached as an appendix.

**Analysis**

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination was incorrect. The question is whether the state court's determination was an unreasonable application of clearly established federal law as decided by the Supreme Court, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). This standard "applies even where there has been a summary denial." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011), quoting Yarborough v. Alvarado, 124 S.Ct. 2140 (2004). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough, 124 S.Ct. at 2149. "[I]t is not an unreasonable application of clearly established Federal law for a state court to

decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 129 S.Ct. 1411, 1413–14 (2009). A habeas court "must determine what arguments or theories ... could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Cullen, 131 S.Ct. at 1402, quoting Richter.

The Supreme Court's decisions in Lindsey, Weaver, and Lynce found ex post facto violations but did not involve punishment of post-conviction misconduct such as Petitioner committed. The good time credits in those cases were unilaterally withdrawn or reduced by the State as a result of a change in the law, with no requirement of misconduct by the prisoner to trigger the loss. Those cases are factually distinct enough from Petitioner's circumstances that the state court's decision was not an objectively unreasonable application of their holdings.

Petitioner does find support in the summary affirmance in Scafati v. Greenfield. The petitioner in that case was paroled after a change in law took effect and, upon his (unspecified) violation of parole, he was returned to prison and not allowed to earn good conduct deductions for the first six months. The decision was summarily affirmed by the Supreme Court, but that does not mean the district court's opinion is a clear holding of the Supreme Court. The Court stated in Mandel v. Bradley, 97 S.Ct. 2238, 2240 (1977) that a district court erred in believing that a summary affirmance of a three-judge court adopted the reasoning as well as the judgment of the lower court. "Because a summary affirmance is an

affirmance of the judgment only, the rationale of the affirmance may not be gleaned solely from the opinion below." Id.

The Supreme Court's summary affirmance in Scafati v. Greenfield certainly lends support to Petitioner's claim, but given its limited precedential value and the uncertainty that it would necessarily apply in this setting, the undersigned cannot conclude that it must be read so broadly as to mandate any reasonable jurist to rule in Petitioner's favor on his claim. A more clearly established Supreme Court holding would be required to reach that determination. See Porras v. Lewis, 2013 WL 2530258, *5-6 (N.D. Cal. 2013) (rejecting habeas claim based on Greenfield when there was post-amendment prison misconduct that triggered loss of good time).

Magistrate Judge Hayes issued a recommendation in Poullard v.Stalder, 2008 WL 4372898 (W.D. La. 2008) that habeas relief be denied an inmate who was subjected to forfeiture of 120 days of good time for prison disciplinary violations even though the law in effect when he was sentenced allowed forfeiture of no more than 30 days for such misconduct. She distinguished Greenfield and Beebe as parole revocation cases that were distinct from the prison misconduct line of cases. In the end, she found that it was sufficient to conclude the state court decision was not an unreasonable application of clearly established Supreme Court precedent regarding the "problematic issue" of applying the Ex Post Facto Clause to such cases. Judge Stagg adopted the recommendation.

The Fifth Circuit's decision in Beebe lends significant support to Petitioner's claim. The district court decision, adopted by the Fifth Circuit, reasons that the forfeiture of good

time under a post-conviction amendment is not, when parole is revoked, punishment for the second offense. Rather, the forfeiture is a sanction that extends the time remaining on the original sentence based on the law enacted after the crime was committed. This rationale is certainly reasonable and perhaps should have persuaded the Louisiana courts that examined this case in the first instance, to whom Petitioner cited Beebe repeatedly, that his claim had merit. If this court were deciding the case de novo, it would likely feel bound by the Fifth Circuit's precedent despite the slightly different statutory amendment at issue.

Things are different, however, because the 1981 Beebe decision was followed by the 1996 enactment of the AEDPA, which makes clear that habeas relief must now be rooted in an unreasonable application of clearly established federal law as decided by the Supreme Court. "Although an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent..., it may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct." Marshall v. Rodgers, 133 S.Ct. 1446, 1450 (2013). Thus, circuit court precedents such as Beebe "are relevant, at most, only to the extent that they reflect law established by the Supreme Court." Coleman v. Thaler, 716 F.3d 895, 901 n. 17 (5th Cir. 2013). Beebe was decided before the AEDPA, so it did not discuss whether the principle at issue had been clearly established by the Supreme Court. Circuit precedent such as Beebe also may not be

used to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this court has not announced." Marshall, 133 S.Ct. at 1450.

This is certainly a close case, but a close case must necessarily lose under Section 2254 habeas review. No Supreme Court holding clearly establishes that a post-conviction change in good-time forfeiture laws may not be applied when the forfeiture is triggered by misconduct committed by the petitioner after the new law is enacted. There is language in some of the Supreme Court's decisions, in settings not involving post-amendment misconduct, that lends support to Petitioner's argument. The Fifth Circuit was persuaded in Beebe that those cases merited habeas relief for a prisoner in Petitioner's circumstances. But the AEDPA now places a much heavier burden on a habeas petitioner, and Petitioner has not made such a strong case as to require relief under the current statute. See Lockyear v. Andrade, 123 S.Ct. 1166, 1172-73 (2003) (denying habeas relief with the observation that "our precedents in this area have not been a model of clarity") and Marshall, 133 S.Ct. at 1450-51 (denying relief when Supreme Court's general standards on issue were not unreasonably applied, but noting the issue would not be insubstantial if presented on direct review).

The Fifth Circuit rejected a federal prisoner's ex post facto claim in a similar probation revocation setting in U.S. v. Byrd, 116 F.3d 770 (5th Cir. 1997), and its decision demonstrates the lack of clarity in this area of the law. Ms. Byrd pleaded guilty in 1994. Her guidelines sentencing range was 57-71 months, but the judge granted a government request to depart downward, which yielded a range of 0-6 months. The court sentenced Byrd to five

years probation. In 1996, Byrd's probation officer petitioned to revoke Byrd's probation based on a positive drug test and associating with felons. The court based Byrd's 57-month sentence on the pre-downward departure range of 57-71 months, overruling Byrd's request to be sentenced within the post-departure range of 0-6 months.

Byrd argued on appeal that application of a version of 18 U.S.C. § 3565, as amended in September 1994, to her resentencing violated the Ex Post Facto Clause. Under the former version of § 3565, she said, the court would have been compelled to base her sentence on the 0-6 month range. The Court assumed the amendment disadvantaged Byrd and explained the case was:

> somewhat complicated, for the conduct underlying Byrd's conviction was completed in 1993 (well before the effective date of the 1994 amendments) but the conduct underlying the probation revocation did not occur until 1996 (substantially after the effective date). If the 57-month sentence imposed upon Byrd's probation revocation (pursuant to the amended § 3565) constitutes the continuing legal consequence of Byrd's original conviction, then the Ex Post Facto Clause is implicated because the acts underlying the conviction did indeed occur before the statute's effective date. If, however, the punishment upon revocation serves as an independent legal consequence of Byrd's probation violation, then the Ex Post Facto Clause is not implicated because the acts underlying the revocation occurred after the effective date.

Byrd, 116 F.3rd at 772. The Fifth Circuit concluded that any error was not clear, because its only prior decision in the probation revocation context rejected an ex post facto claim and stated in dicta that the act that exposed the defendant to revocation happened after the change in law. Id. at 773.

Byrd argued the court should have analogized her case to similar situations involving amendments to statutes governing revocation of parole and supervised release. The Fifth

Circuit agreed with her that "[i]t is true ... that a significant majority of the circuits have held that application of amended statutes governing revocation of parole or supervised release violates the Ex Post Facto Clause when the conduct underlying the conviction occurred before amendments to those statutes but the conduct underlying the revocation occurred after the amendments." Byrd, 116 F.3rd at 773, n.1 (citing Beene and Greenfield).[1] Policy statements of the Sentencing Guidelines said that violations of probation should be treated as punishment for the initial offense and not the conduct for which probation was revoked. The Fifth Circuit nonetheless declined to hold that the district court's error was so conspicuous as to be plain error. Byrd lends support to Petitioner's basic argument but, by pointing out the lack of clarity in this area of the law, undermines Petitioner's ability to obtain relief on habeas review.

The Supreme Court has explained that if the Section 2254(d) standard "is difficult to meet, that is because it was meant to be." Richter, 131 S.Ct. at 786. Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary

---

[1] The Supreme Court has since stated that construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release presents double jeopardy concerns. "Where the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense. Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties." Johnson, 120 S.Ct. at 1800.

conclusion was unreasonable." Id. The state prisoner who seeks federal habeas relief "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." Id. at 786-87.

Petitioner has presented a good argument, but there is still room for fair minded disagreement as to whether any Supreme Court decision clearly establishes a rule of law that requires he be granted relief. Under these circumstances, the undersigned must recommend that the petition be denied. It is, however, recommended that Petitioner be granted a certificate of appealability under 28 U.S.C. § 2253(c) given that Petitioner has at least made a substantial showing of the denial of a constitutional right. His claim is worthy of appellate review.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for habeas corpus relief be **denied**.

**IT IS FURTHER RECOMMENDED** that Petitioner be granted a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1).

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of October, 2013.

Mark L. Hornsby
U.S. Magistrate Judge